**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeal of Cowan         }
}
}    Docket No. 60-4-04 Vtec
}
}

Decision and Order on Motions for Summary Judgment

Appellant Isaac Cowan appealed a March 31, 2004 decision of the Development Review Board (DRB) of the Town of Richmond, affirming the Zoning Administrator's decision contained in a January 29, 2004 letter[1]. Appellant is represented by John W. O'Donnell, Esq.; the Town of Richmond is represented by Mark L. Sperry, Esq.; Interested Persons Erica Ell and Edward Gaston are represented by David L. Grayck, Esq. The appeal has been submitted on summary judgment; the following facts are undisputed unless otherwise noted.

Appellant Isaac Cowan owns a one-acre parcel of land located at 420 Snipe Ireland[2] Road, in the agricultural/residential zoning district of the Town of Richmond. Snipe Ireland Brook bisects the parcel, at an elevation approximately 30 feet below the elevation of the road, running roughly parallel to the road approximately a hundred feet laterally from the edge of the road. Some portion of the Cowan property westerly of the brook is also located within the flood hazard overlay zoning district surrounding the brook.

The flood hazard overlay zoning district is defined in the Zoning Regulations as the areas within the 100-year flood plain by reference to "areas of special flood hazard (Zone A) on the most current Flood Insurance Rate Maps (FIRM) and on the Flood Boundary and Floodway Maps created by the Federal Emergency Management Agency (FEMA). "Zoning Regulations, § 6.8.2 (emphasis added). A "Zone A" area is described (on the instructions for applying for single lot amendments to those maps, at p. 6) as an area of approximate flooding with no base flood elevations determined. To obtain a single-lot amendment to the federal maps in a Zone A area, the applicant is directed to have the engineer or surveyor first determine a base flood elevation, either from a federal, state or local agency that has developed a base flood elevation for the area, or by following a specified methodology.

At Appellant's parcel, at least until or unless[3] Appellant applies to FEMA for a single-lot amendment to the applicable national flood insurance program maps, the mapped floodplain location occupies the area between Snipe Ireland Road and Snipe Ireland Brook (as well as an area on the other side of the brook not at issue in the present case). For the purposes of the present case, we will refer to the 100-year floodplain as represented by the FIRM and FEMA maps as "the mapped floodplain location," and to the 100-year floodplain as surveyed according to accepted methodology and located for a particular parcel as "the surveyed floodplain location."

In or about May of 1999, Appellant apparently met at the property with the state's Floodplain Management Engineer. That engineer wrote a letter to Appellant dated May 11, 1999, with a copy to the then-Zoning Administrator, informing him in full that:

The site we visited is located as indicated on the enclosed copy of the FIRM. The base flood level at this site is about 10 feet above streambed. If the retaining wall is kept at least 50 feet from the stream, as required by Richmond regulations, it will not be in the flood area. (Emphasis added.)

Appellant intends to build a house and a separate residential garage on this parcel of land. On November 27, 2000, prior to construction of the retaining wall at issue in this appeal, Appellant applied for a zoning permit to install a four-foot thick, 108-foot long retaining wall made of concrete waste blocks, and to fill in behind the wall and regrade the slope. The erosion control plan narrative accompanying the application stated that " [a] twelve foot [high] concrete wall will be built at an elevation that is out of flood plane [sic], . . . " The sketch plans accompanying the application included an elevation cross section showing an elevation change of 30 feet from the road down to the stream, and showing a lateral distance of 12 feet from the proposed wall to the stream.

In a letter dated January 9, 2001, the Zoning Administrator approved Appellant's application for the construction of the retaining wall as an Aaccessory structure" (including conditions requiring him to revise the site plan to depict setbacks and distances from the wall to the top of the streambank and to develop the project as depicted on the revised plan).

In a letter dated January 19, 2001, from the state's Floodplain Management Engineer to the Zoning Administrator, the engineer referred to the earlier (May 1999) letter as having "estimated" the 100-year flood level of the brook as 10 feet above the streambed, and recalled from the 1999 site visit that the flood area extended 25 to 30 feet back from the edge of the stream. The engineer stated that therefore "I believe the retaining wall is in the flood area;" and stated that "[i]t is definitely in the "mapped" flood area shown on the FIRM." (Emphasis added.) There is no indication that a copy of this letter was provided to Appellant.

Appellant constructed the wall in February of 2001. In connection with enforcement efforts that are the subject of Docket No. 102-5-02 Vtec, the Zoning Administrator notified Appellant by a letter issued March 12, 2001 that:

Please note that the structure being permitted must be located outside of the flood hazard overlay district as shown on the most current Flood Insurance Rate Map (FIRM - see Section 6.8 of the Zoning Regulations). The westerly edge of this district on your property is 25 feet from the edge of Snipe Island [sic] Brook. You are reminded that your application represented that the retaining wall " will be built at an elevation that is out of the floodplane." [sic]

The March 12, 2001 letter was not appealed. This letter, and an August 2001 Notice of Violation containing similar language, constituted the Zoning Administrator's determinations that the retaining wall was within the mapped flood hazard overlay district under § 6.8.3 of the Zoning Regulations. That determination is final, and cannot now be reopened unless the map were to be changed.

On August 14, 2003, the Zoning Administrator approved Appellant's proposal to build a single-family dwelling and detached garage, including the removal of the retaining wall.

By a handwritten letter dated January 13, 2004, Appellant requested that the Zoning Administrator "revisit the determination of the flood elevation for Snipe Ireland" Brook, based on a new engineering study Appellant enclosed from Trudell Consulting Engineers, under an engineer's cover letter dated January 7, 2004[4]. The Zoning Administrator issued a letter dated January 29, 2004 which the DRB characterized as "declining to revisit the location of the 100-year floodplain" on Appellant" s parcel. On February 5, 2004, Appellant appealed the Zoning Administrator's decision to the DRB, requesting a "§ 6.8 flood plain determination" and stating as the reason for the appeal: "review engineering on location of flood plain. "On February 20, 2004, Appellant" s engineers provided more information about the new engineering study methodology to the Zoning Administrator, presumably for the DRB's use in the appeal.

The Town argues that the Zoning Administrator's March 12, 2001 letter, stating that the westerly edge of the flood hazard overlay district on Appellant's property is 25 feet from the edge of Snipe Ireland Brook, constitutes a final determination of the boundary of the flood hazard district on Appellant's property, and that the circumstances of this case do not present any changed circumstances that would allow reopening or reconsideration of that determination. However, this case does not involve the question of whether circumstances have changed sufficiently to reopen or reconsider an otherwise-final determination. Rather, an applicant in a flood hazard overlay zone is entitled under the Zoning Regulations to a ruling by the DRB as to whether "additional land not within the floodplain" is revealed by "surveying of an individual parcel." § 6.8.2 and 6.8.3.

The Zoning Regulations specifically provide in § 6.8 for a flood hazard overlay zoning district. Section 6.8.2 defines the flood hazard overlay district as consisting of "all areas identified as areas of special flood hazard (Zone A) on the most current Flood Insurance Rate Maps (FIRM) and on the Flood Boundary and Floodway Maps created by the Federal Emergency Management Agency (FEMA)[5]. These are areas within the 100-year floodplain." Section 6.8.2 also specifically provides that these " survey maps may be inaccurate and surveying of an individual parcel may reveal additional land not within the floodplain." (Emphasis added.)

The inaccuracy of these maps on the ground is also noted on the maps themselves. The 1982 FEMA Flood Boundary and Floodway Map for Richmond used in this case contains a "Notes to User" section that discloses that the floodway boundaries were computed at cross sections and interpolated between cross sections. No cross section lines are shown in the portion of the map provided in this case as pertaining to the Cowan property, suggesting that the mapped floodplain was interpolated and not calculated by FEMA at the location of the Cowan property.

Section 6.8.3 limits the discretion of the Zoning Administrator to a determination of whether a parcel falls within the flood hazard overlay district only by reference to the Flood Rate Insurance Maps. That is, any determination of a surveyed floodplain location for a particular parcel, as opposed to the mapped floodplain location, must be made in a proceeding before the DRB. An applicant could come before the DRB either in an appeal to the DRB from an adverse decision by the Zoning Administrator (as in the present appeal), or in an application to the DRB for conditional use approval under § 6.8.5.

The March 2001 Zoning Administrator's letter kept within the authority of § 6.8.3 by only determining the mapped floodplain location. That letter referred to the district as that " shown on the most current Flood Insurance Rate Map (FIRM - see Section 6.8 of the Zoning Regulations). The westerly edge of this District on your property is 25 feet from the edge of Snipe Ireland Brook." The antecedent of the phrase "this District" in the second sentence is the district as shown on the map in the first sentence. The March 2001 Zoning Administrator's letter did not determine the surveyed floodplain location, nor did Appellant's 2000 application request any such determination.

Nothing in the Zoning Administrator's March 2001 determination of where the mapped floodplain fell on Appellant's property precluded Appellant from then having an engineering study done for his property to try to show, as anticipated by the language of § 6.8.2 of the Zoning Regulations, that the property contains additional land not within the floodplain. Similarly, Appellant was not and still is not precluded from applying to FEMA for a single-lot amendment to the applicable national flood insurance program map, which uses the same methodology. The DRB should have considered Appellant's application for a determination of the surveyed floodplain on its merits, based on the engineering studies provided with the January and February 2004 submittals.

The DRB did not consider the application on its merits, and also failed to provide any findings to support its decision, as required by 24 V.S.A. § 4471(a). Its decision includes only the following three statements as "findings," none of which is a finding of fact relating to the merits of the application: that the Town is plaintiff in an enforcement action against Appellant for construction

of the retaining wall in the floodplain, that Appellant requested a new determination of the floodplain based on an engineering study, and that the Zoning Administrator "declin[ed] to revisit" the question of the location of the floodplain.

Accordingly, based on the foregoing, Appellant" s Motion for Summary Judgment is GRANTED, and the Town's and Interested Persons' Motions for Summary Judgment are DENIED, concluding this appeal. Appellant was and is entitled to obtain from the DRB a determination of the extent and location of the actual floodplain on his property, based on the engineering studies provided with the January and February 2004 submittals. Accordingly, the DRB decision is hereby VACATED and the matter is REMANDED for the DRB to take up the merits of that application. Any future appeal of a future ruling of the DRB on the merits of that application would be a new appeal in this Court and would receive a new docket number.

As discussed in the conference held on August 31, 2004, the two other related Environmental Court cases (Docket Nos. 102-5-02 Vtec and 222-12-03 Vtec) will remain on inactive status pending the completion of the DRB's work on the merits of this application. An earlier appeal, Docket No. 73-3-02 Vtec, was concluded but by agreement of the parties has not been entered as a final order to allow any future appeals to the Supreme Court from this group of cases to be taken together. The Chittenden Superior Court case, Docket No. 145-03 Cnc (Cowan v. Town of Richmond) is being dismissed by the plaintiff as moot, but that dismissal does not appear to have been filed to date. We request that Attorney O" Donnell send a courtesy copy of that voluntary dismissal motion or stipulation to Judge Wright at the Environmental Court, as well as filing the original with the Chittenden Superior Court, as Judge Wright remains specially assigned to the Chittenden Superior Court case.

Done at Barre, Vermont, this 23rd day of September, 2004.

_____

Merideth Wright

Environmental Judge

---

### Footnotes

1. Although it is the appeal of this letter that is de novo before the Court, none of the parties has provided this letter in connection with the pending motions. In its own decision, the DRB characterized the Zoning Administrator's action as "declining to revisit" the issue of the location of the 100-year floodplain on Appellant's property.

2. The road and brook are variously referred to in the letters and other material submitted on summary judgment both as Snipe Ireland and as Snipe Island.

3. The language of §6.8.2 refers to the "most current" Flood Rate Insurance Maps, suggesting that if those maps are amended for a particular parcel, the intent of the ordinance was for that amendment to have the effect of automatically amending the overlay district.

4. A study has been provided to the Court, but without the January 2004 engineer's cover letter.

5. Section 6.8.2 also provides that "an official Flood Hazard Map will be adopted with these regulations;" although no such official town map has been provided by the parties in connection with these motions and we cannot determine if the Town ever adopted such a map.